UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-60934-CIV-DAMIAN

SIESTA LLC,

      Plaintiff,

v.

PREMIER INVESTMENTS USA LLC,

      Defendant.

_____/

ORDER DENYING *EX PARTE*
MOTIONS FOR TEMPORARY RESTRAINING ORDER [ECF NOS. 8, 9]

**THIS CAUSE** is before the Court upon Plaintiff, Siesta LLC's ("Plaintiff"), *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction [("Motion") ECF No. 9] and Amended *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction [("Amended Motion") ECF No. 9], both filed on April 3, 2026.

THE COURT has reviewed the Motions, the pertinent portions of the record and the applicable law and is otherwise fully advised. For the reasons that follow, this Court finds that the Motions are due to be denied.

I.      BACKGROUND

On April 2, 2026, Plaintiff filed a Complaint against Defendant, Premier Investments USA LLC d/b/a/ Freez Drinkware ("Defendant"), for copyright infringement and unfair competition after Defendant allegedly misappropriated or reproduced/copied the designs that Plaintiff affixes on drinkware that it sells to wholesalers and retail customers. *See generally*

ECF No. 1 ("Compl.").[1] As alleged in the Amended Complaint, Plaintiff is the creator and exclusive owner of a portfolio of original, creative works comprised of illustrated designs that are applied as full-wrap graphics to its drinkware products. Am. Compl. ¶ 10. These designs include the Siesta Tree Mountain Outline, the Siesta Sea Life Turtles, and the Palm Tree Beach Scene (collectively, the "Copyrighted Works"). *See id.* ¶¶ 10-11. Plaintiff holds U.S. Copyright Registration Certificates that cover the Siesta Tree Mountain Outline and the Siesta Sea Life Turtles designs. *Id.* ¶ 12. These Copyrighted Works have been published for public viewing through print and digital catalogues and have been prominently displayed at national trade shows. *Id.* ¶¶ 12-13.

Defendant is a direct competitor of Plaintiff's in the souvenir and specialty drinkware market and sells to the same class of customers, souvenir and gift retailers, through the same channels, trade shows and wholesale catalogues, as does Plaintiff. *Id.* ¶ 15.

Plaintiff alleges that Defendant has reproduced, copied, and distributed drinkware products with artistic designs that are substantially similar, if not virtually identical, to Plaintiff's Copyrighted Works ("Infringing Products"). *Id.* ¶ 16. Defendant is allegedly marketing and selling these Infringing Products through their 2026 catalog and at trade shows. *Id.*

The day after filing the Complaint, Plaintiff filed an *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction. [ECF No. 8]. The next day, Plaintiff filed an Amended *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 9], to which Plaintiff attached a Declaration from Plaintiff's representative, Adam

---

[1] On April 6, 2026, Plaintiff filed an Amended Complaint that is word-for-word identical to the initial Complaint except it is signed by local counsel and not the *pro hac vice* counsel. [("Amended Complaint") ECF No. 10].

Samuel ("Samuel Declaration") [ECF No. 9-1], in support of the Amended Motion. In the Amended Motion, Plaintiff seeks entry of a temporary restraining order ("TRO") that: enjoins Defendant from manufacturing, marketing, or selling any products bearing designs that are copied from or substantially similar to Plaintiff's Copyrighted Works; requires Defendant to remove all Infringing Products from trade show displays, catalogs, websites, and other commercial channels; requires Defendant to preserve all documents and records relating to the Infringing Products; authorizes the impoundment of Infringing Products and related marketing materials; authorizes limited discovery; and sets a preliminary injunction hearing. *See generally* Am. Mot. Plaintiff avers that providing notice to Defendant would cause irreparable harm because Defendant would accelerate its efforts to distribute the Infringing Goods through its distribution network and would hurt Plaintiff's reputation by associating Plaintiff with Defendant's allegedly lesser quality knockoffs. *See id.* at 8. The Samuel Declaration expands on the issue:

> Defendant's continued, unauthorized sale of these knockoff products is causing Siesta immediate and irreparable harm that cannot be adequately compensated by money damages alone. Siesta and Freez sell to the same class of wholesale buyers—souvenir and gift retailers—through the same trade shows and wholesale catalog channels. When a retailer purchases Freez's infringing products, that sale is permanently lost to Siesta. The retailer, having already stocked an infringing product, is unlikely to also purchase Siesta's original for the same season. These lost sales and the resulting lost long-term customer relationships cannot be identified or quantified through a subsequent damages calculation because we have no way of knowing which specific customers chose Freez instead of Siesta, or how many future reorders were foreclosed as a result.

Samuel Dec. ¶ 10. Mr. Samuel also avers that the relief is needed on an expedited basis due to the Spring trade show season and that expedited discovery would help Plaintiff determine the full scope of Defendant's infringement.

3

## II.   LEGAL STANDARD

A TRO is an extraordinary remedy. *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Bloedorn v. Grubs*, 631 F.3d 1218, 1229 (11th Cir. 2011). A no-notice TRO "is an extreme remedy to be used only with the utmost caution" and should be granted only in exceptional cases. *Levine v. Camcoa, Ltd.*, 70 F.3d 1191, 1194 (11th Cir. 1995); *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983).

Under Rule 65, a district court may issue a TRO without notice to the adverse party only where:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A)-(B). "[T]he requirements of Rule 65(b)(1) are not mere technicalities but establish minimum due process." *Woodard-CM, LLC v. Sunlord Leisure Products, Inc.*, 2020 WL 5547917, at \*1 (S.D. Fla. July 29, 2020) (Williams, J.); *see also Emerging Vision, Inc. v. Glachman*, 2010 WL 3293346, at \*3 (S.D. Fla. June 29, 2010) (Seltzer, M.J.), *report and recommendation adopted*, 2010 WL 3293351, at \*1 (S.D. Fla. Aug. 11, 2010) (Ryskamp, J.). Courts have explained that "[t]he normal reason for proceeding without notice is that the opposing side is unable to be found or the identity of the opposing side is unknown. In some limited circumstances, proceeding without notice is also justified upon a showing that notice would lead to the destruction of evidence." *Woodard-CM*, 2020 WL 5547917, at \*1 (quoting *Glob. HTM Promotional Grp., Inc. v. Angel Music Grp., LLC*, 2006 WL 8432722, at \*1 (S.D. Fla. Mar. 1, 2006)).

4

The chief function of a TRO is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (discussing preliminary injunctions); *Granny Goose Foods Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974) (discussing TROs); *All Care Nursing Serv. v. Bethesda Mem'l Hosp.*, 887 F.2d 1535, 1537 (11th Cir. 1989).

If the movant establishes that it is justified in seeking *ex parte* relief, the movant next bears the burden to establish that injunctive relief is appropriate by showing: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005).

### III.   DISCUSSION

As discussed below, the Amended Motion is due to be denied because it does not comply with the Local Rules of the United States District Court for the Southern District of Florida and because Plaintiff fails to establish entitlement to an *ex parte* or no-notice TRO under the facts and circumstances presented.

**1.  <u>The Amended Motion Does Not Comply With The Local Rules.</u>**

Plaintiff's Amended Motion is labeled "*Ex Parte*" and seeks entry of a TRO. Under Local Rule 7.1(a)(2), "any motion seeking . . . ex parte relief or a temporary restraining order[ ] shall be accompanied by a proposed order that is filed and served submitted via email to the Court as prescribed by Section 3I(6) of the CM/ECF Administrative Procedures." Review of the Amended Motion and the Chambers email inbox reveals that Plaintiff did not submit a proposed TRO with the Amended Motion or by email. Further, despite including

the words "*Ex Parte*" in the title of the Amended Motion, the Amended Motion was not filed using one of the events specifically earmarked for *ex parte* filings (so the Amended Motion is not restricted from public view). *See* S.D. Fla. L.R. 5.4(d). Noncompliance with the Local Rule is sufficient cause to deny the Amended Motion on its own, but for the sake of judicial efficiency, this Court also addresses the merits of the *ex parte* relief sought.

2. **Plaintiff Fails To Show Adequate Justification For *Ex Parte* Relief.**

Even if Plaintiff had complied with the requirements of the Local Rules, to obtain *ex parte* relief, a party must strictly comply with the requirements set out by the case law and Rule 65(b). "These requirements are not mere technicalities, but establish minimum due process." *San Antonio Winery, Inc. v. Enovation Brands, Inc.*, No. 20-20515-CIV-SCOLA, 2020 WL 3046032, at *1 (S.D. Fla. Feb. 12, 2020) (internal citation omitted); *see also American Can Co. v. Mansukhani*, 742 F.2d 314, 324 (7th Cir. 1984) ("The specific requirements of Rule 65(b) are not mere technical niceties."). The "stringent restrictions" of Rule 65 recognize that "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods*, 415 U.S. at 438-39; *see also American Can Co.*, 742 F.2d at 324 ("The procedural hurdles of Rule 65 are intended to force both the movant and the court to act with great care in seeking and issuing an *ex parte* restraining order.")

Furthermore, "[i]t is well established under federal law that a [TRO] is an emergency remedy which should only be issued in exceptional circumstances." *Zedon v. Pickrell*, 338 F. Supp. 2d 1093, 1094-95 (D.N.D. 2004); *see also Levine v. Camcoa, Ltd.*, 70 F.3d 1191, 1194 (11th Cir. 1995) ("An *ex parte* [TRO] is an extreme remedy to be used only with the utmost caution."). There are "very few circumstances justifying the issuance of an *ex parte* TRO."

*Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). Courts have granted an *ex parte* TRO "where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing." *Id.* Courts have also recognized "a very narrow band of cases in which *ex parte* orders are proper because notice to the defendant would render fruitless the further prosecution of the action." *Id.* (citing *American Can Co.*, 742 F.2d at 322).

By way of example, "when a party threatens imminent destruction of the disputed property, its removal beyond the confines of the state, or its sale to an innocent third party, giving the defendant notice of the application for an injunction could result in an inability to provide any relief at all." *Adobe Systems, Inc. v. South Sun Prods., Inc.*, 187 F.R.D. 636, 640 n.3 (S.D. Cal. 1999) (internal quotation marks omitted); *see also Fifth Third Bank v. Glob. Workforce Int'l, Inc.*, No. 18-cv-81000-WPD, 2018 WL 7820724, at *3 (S.D. Fla. July 31, 2018) (Dimitrouleas, J.) ("The Court finds that the entry of this Temporary Restraining Order *ex parte* is appropriate because upon notice of these proceedings it is likely Defendants will take further efforts to abscond with the funds.").

### a) *Plaintiff Has Not Shown Immediate And Irreparable Harm.*

As noted above, before this Court will issue an *ex parte* TRO, Plaintiff must satisfy Rule 65(b)(1). To meet the first requirement of Rule 65(b)(1), Plaintiff must provide specific facts in an affidavit or verified complaint clearly showing "that immediate and irreparable injury, loss, or damage will result to [Plaintiff] before [the Defendant] can be heard in opposition." *See* Fed. R. Civ. P. 65(b)(1)(A). Plaintiff submits the Samuel Declaration,[2] in which Plaintiff

---

[2] Plaintiff's Amended Complaint is not verified, so its representations cannot be considered when addressing Rule 65(b)(1)(A).

essentially argues that it will suffer immediate and irreparable harm if an *ex parte* TRO is not issued because Defendant sells to the same wholesale buyers as Plaintiff, so when a retailer purchases Defendant's products, "that sale is permanently lost to [Plaintiff]. The retailer, having already stocked an infringing product, is unlikely to also purchase [Plaintiff's] original for the same reason." Samuel Dec. ¶ 10. "These lost sales and the resulting lost long-term customer relationships cannot be identified or quantified through a subsequent damages calculation because we have no way of knowing which specific customers chose [Defendant] instead of [Plaintiff], or how many future reorders were foreclosed as a result." *Id.*

This Court finds that the Samuel Declaration lacks sufficient details showing that Plaintiff will suffer irreparable harm absent a TRO. Although Mr. Samuel states that Plaintiff will incur irreparable harm through unquantifiable lost sales, it is not clear that such lost sales in these circumstances cannot be remedied through money damages. "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990); *Seacoast Banking Corp. of Fla. v. Diemer*, No. 6:20-CV-57-ORL-37LRH, 2020 WL 1674309, at *4 (M.D. Fla. Jan. 17, 2020) ("Money alone is not typically an irreparable injury because it can be compensated later."). If Plaintiff's damages are based on the sales it loses to Defendant, it should be able to calculate that loss using Defendant's records of sales of the Infringing Products.

Further, while the "loss of customers and goodwill is an irreparable injury," *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (internal quotation marks and citation omitted), Plaintiff has not offered any record evidence to support the conclusory

8

statement in the Samuel Declaration that the "lost sales and the resulting long-term customer relationships cannot be identified or quantified." Samuel Dec. ¶ 10.

Thus, this Court finds that the Samuel Declaration does not satisfy Rule 65(b)(1)'s requirement that Plaintiff "clearly show that immediate and irreparable injury, loss, or damage will result[,]" Fed. R. Civ. P. 65(b)(1)(A). *See Dai v. Shenzhen Huyuansheng Zhineng Keji Youxian Gongsi*, No. 25-cv-1815, 2026 WL 196633, at *3 (W.D. Tex. Jan. 16, 2026) (not crediting sworn statement that infringement will harm the TRO movant's goodwill and business reputation because "[b]eyond those conclusory assertions, there is no evidence in the record to support that Plaintiff has lost customers or suffered reputational harm as a result of the alleged infringement"); *MCS Indus., Inc. v. At Home Stores, LLC*, No. 22-3436, 2022 WL 4110523, at *3 (E.D. Pa. Sept. 8, 2022) (denying *ex parte* TRO on Rule 65(b)(1) grounds because "Plaintiff makes only general and vague statements as to other examples of irreparable harm it contends it will suffer in the absence of a TRO").

### b)      *Plaintiff Has Not Shown That Notice Should Not Be Given.*

Plaintiff contends that providing notice to Defendant will accelerate Defendant's alleged infringement and escalate the measure of irreparable harm Plaintiff suffers from said infringement. However, the undersigned notes that Plaintiff's counsel sent a cease-and-desist letter to Defendant in February 2026 and served the Amended Motion by email to Defendant's principals when it was filed, *see* Am. Compl. ¶ 20; Am. Mot. at 11. Thus, Plaintiff has already given Defendant ample notice of its claims, the impending lawsuit, and the pending Amended Motion, so it is not clear how Plaintiff would suffer irreparable harm by giving Defendant an opportunity to respond to the Amended Motion when Plaintiff has already given notice. *See Brown v. Hoffman*, No. 13-22656-Civ, 2013 WL 12099405, at *1 (S.D.

9

Fla. Aug. 6, 2013) (Scola, J.) ("[B]ecause Plaintiff has already made Defendants aware of this lawsuit and of his initial request for injunctive relief, there would be no harm that would result from providing Defendants notice of Plaintiff's renewed request for injunctive relief. Accordingly, Plaintiff has not shown a harm which might justify the conclusion that notice should not be required.").

In sum, Plaintiff has not shown that the likelihood of injury is so imminent and irreparable that notice and a hearing on an appropriate motion for preliminary injunction is impractical or impossible under the circumstances of this case, especially in light of the fact that Plaintiff has been aware of Defendant's alleged infringing conduct and the Defendant has been on notice of Plaintiff's claims since at least February 2026.

Therefore, Plaintiff has not shown that these circumstances warrant the extreme remedy of an *ex parte* TRO. Instead, this Court finds that it will be better able to fully address Plaintiff's allegations with proper notice to and input from Defendant. The risk that Defendant might engage in the conduct Plaintiff has described in its Amended Motion is speculative, as is the risk that the Plaintiff will sustain irreparable harm as a result of said notice.

Therefore, this Court denies the request for *ex parte* relief.

## IV.   CONCLUSION

For the reasons set forth above, this Court finds that Plaintiff has failed to meet the "high burden" to justify issuance of an *ex parte* TRO under the circumstances of this case. Because the Amended Motion is denied on this basis, this Court will not engage in an analysis of whether Plaintiff satisfies the *Schaivo* four-part TRO test at this time.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Amended *Ex Parte* Motion for Temporary Restraining Order [**ECF No. 9**] is **DENIED WITHOUT PREJUDICE**. If Plaintiff wishes to renew its request for a temporary restraining order or preliminary injunction, it must comply with the applicable Federal and Local Rules. In addition, a proposed order submitted in compliance with this Court's Local Rules must detail both the factual and legal bases for issuance of a preliminary injunction or TRO. If Plaintiff wishes to renew its request for *ex parte* relief, it must raise "specific facts" (not conclusory statements) that "**clearly show** that **immediate** and **irreparable** injury, loss, or damage **will** result[.] Fed. R. Civ. P. 65(b)(1)(A) (emphases added). It is further

**ORDERED AND ADJUDGED** that the *Ex Parte* Motion for Temporary Restraining Order [**ECF No. 8**] is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 23rd day of April, 2026.

_____
**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

cc:   Counsel of record

11